No. 23,275.

H. G. MATTESON, *Appellee,* v. OLAF O. JOHNSON et al. (G. E. SWEET, *Appellant.*)

### SYLLABUS BY THE COURT.

OPENING UP DEFAULT JUDGMENT—*Insufficient Grounds.* After lands had been advertised for sale under a judgment of foreclosure, the holder of a second mortgage, who was served with summons by publication, learned of the proceedings and paid into court the amount of the plaintiff's judgment and costs, and plaintiff receipted for the money and recalled his order of sale. Nearly a year later, the holder of the second mortgage on notice to plaintiff had the judgment opened, filed his cross-petition and on default took judgment foreclosing his mortgage, with an order of sale to satisfy both judgments. The land was sold and bid in by the second mortgagee and the sale was confirmed. The fee title holder had been adjudged a bankrupt and more than a year prior to the opening of the first judgment the plaintiff paid $25 to the trustee in bankruptcy and procured a quitclaim deed of the lands which he held at the time the first judgment was opened. After the sale had been confirmed, plaintiff applied to have the second judgment opened and be let in to defend and to contest the amount due upon the second mortgage and to redeem from the amount found due. On the ground that all proceedings leading up to the second judgment and sale were void for failure to give notice to the holder of the fee title of the application to open the first judgment, the court set aside the confirmation of sale and opened up the second judgment and tried out the new issues. *Held,* that plaintiff having notice of the action and the proceedings opening up the first judgment long after he became the holder of the fee title, it was error to set aside the confirmation of sale and to open up the second judgment.

Appeal from Cheyenne district court; W. E. MAHIN, judge *pro tem.* Opinion filed December 10, 1921. Reversed.

*J. L. Finley,* of St. Francis, and *T. F. Garver,* of Topeka, for the appellant.
*D. G. Hines,* of Benkelman, Neb., *John M. Stewart, Ernest B. Perry,* and *Don W. Stewart,* all of Lincoln, Neb., for the appellee.

The opinion of the court was delivered by

PORTER, J.: In 1916 H. G. Matteson commenced this action to foreclose a mortgage on lands in Cheyenne county belonging to James D. Rose. Sweet held a second mortgage on the land. All the parties are residents of Nebraska. Service was obtained upon Rose and Sweet by publication. A default judgment was taken in Matteson's favor foreclosing his mortgage and, upon a showing that the land had been abandoned, the court in the decree provided for six months equity of redemption. Sale was ordered and on the day previous to the time fixed for the sale Sweet learned of the foreclosure and paid to the clerk of the court the amount of Matteson's judgment, interest and costs, and thereupon Matteson withdrew his order of sale. More than a year afterwards and on November 8,

1917, Sweet served notice to open the judgment and to be let in to defend, alleging that he had no actual notice of the pendency of the action in time to present his defense. At the hearing of the motion Matteson appeared by his attorney of record. The motion was sustained and the default was set aside. Sweet's answer alleged that in paying off the Matteson judgment he intended to and believed he was making redemption as provided by law; that by reason of Matteson's acceptance of the money and withdrawal of the order of sale, he became subrogated to Matteson's rights under the first mortgage. He asked foreclosure of his second mortgage and a decree for the sale of the property under both judgments. On December 14, 1917, he was given judgment by default as prayed for. At the sale, January 14, 1918, Sweet bid in the land for the amount of both judgments, interest, costs and taxes. The sale was confirmed April 2, 1918.

James D. Rose, who held the fee title to the lands, had been adjudged bankrupt in the United States court of Nebraska. Almost a year before Sweet obtained the order opening Matteson's judgment, Matteson applied to the trustee in the bankruptcy proceedings to purchase the interest of Rose in the lands. The trustee filed an application before the referee stating there was an equity in the lands that belonged to the bankrupt; that the trustee had made several attempts to sell the same without results; that he was offered by Matteson the sum of $25 for a quitclaim deed; and that the offer seemed fair and reasonable. The referee made an order directing him to execute a quitclaim deed to Matteson upon the payment of $25, and the deed was executed on January 29, 1917.

On July 8, 1918, after the confirmation of the sale under Sweet's judgment, Matteson came into court with a motion to vacate and modify Sweet's judgment, alleging a number of reasons: *First*, mistake and irregularity on the part of the court in rendering and of Sweet in obtaining the judgment; *second*, because "plaintiff is now and has been at all times since January 29; 1917, the owner of the legal and equitable title to said land and entitled to the possession thereof"; *third*, it was alleged that on September 15, 1916, Sweet had collected as rents from the land $500 and in January, 1918, $100 more rents and neglected to give any credit therefor and had wrongfully concealed the collections from the court and had misled the court in rendering judgment in his favor for the full amount of his mortgage debt; that Sweet's judgment should have

been for $671.53 instead of $1,306.25; *fourth,* because plaintiff (Matteson) "had no actual notice or knowledge of Sweet's motion to open up the original judgment nor of the proceedings thereunder until May 19, 1918; *fifth,* "because the plaintiff states that he desires to redeem the land" by paying the amount of Sweet's judgments, after crediting rents collected by Sweet. When the motion came up for hearing the court set aside the confirmation of Sweet's sale and continued the application to open the judgment until a later date, when the matter came before a judge *pro tem.* The latter held that the Sweet judgment should be opened for the reason that no notice was given to James D. Rose of Sweet's application to open the first judgment or of the filing of his cross-petition, and for want of such notice the proceedings were void. New issues were then made up and were tried. Matteson offered his evidence to support his contentions with respect to the collection of rents by Sweet. Sweet demurred to the evidence, and when it was overruled, offered his evidence and denied that he had collected $500 rent in 1916, but admitted that in September, 1916, after he had redeemed from the first mortgage and after he had paid the taxes on the land, he collected $160 rent from the tenant for that year, and $96 more in January, 1918. He offered in evidence also an instrument executed by Rose on May 30, 1919, assigning to him all claims for use and occupation of the lands since the commencement of the foreclosure proceedings. The trustee in bankruptcy testified that he took no title to nor possession of any of the crops on the land, and received no part of the landlord's share because the crops were not sown or planted until after the adjudication in bankruptcy.

The court made a number of findings of fact and conclusions of law, holding that Matteson derived his title by deed from the trustee and was entitled to be subrogated to all the rights of Rose. There was a finding that Sweet had collected the amount of rents claimed by Matteson in September, 1916, and that he had applied none of the rents to the indebtedness, and by law was required to give credit therefor upon the mortgage. As conclusions of law, the court held that Matteson took the legal and equitable title superior to the rights of the defendant, Sweet, upon paying into court the amount of Sweet's judgment as modified. A motion for a new trial was overruled and Sweet brings the case here for review.

A question which quite naturally intrudes itself is, What title did Matteson acquire to the rents for 1916 by virtue of his quit-

claim deed which was not executed until January 29, 1917? It is true that equity in the ordinary case will require a mortgagee in possession who afterwards forecloses his mortgage to give credit on the mortgage debt for rents collected. But the quitclaim deed conveyed to Matteson no interest in rents collected or uncollected for the year 1916. The only person who had the right to collect the rents was Rose and he has assigned his interest therein to Sweet.

The important question, however, is whether it was error to open Sweet's judgment. Matteson brought the action in the first place as plaintiff, and obtained judgment foreclosing his own mortgage. He accepted the amount of his judgment paid by Sweet, but he did not cease to be a party to the action; and he still describes himself in the motion and in his pleadings as "the plaintiff." Having commenced the action and still being a party to it, he goes out and purchases the interest of Rose for a mere trifle, and although he had acquired this interest almost a year before Sweet's application was heard to open the judgment, he made no objection to the application. The journal entry of the court on that matter shows that at the hearing of Sweet's application, Matteson appeared by his attorney of record, a fact to which no reference is made in the Matteson brief. Be that as it may—when he procured the quitclaim deed he purchased *lis pendens.* He was bound to know all about the proceedings which he had commenced. Moreover, the fact, as alleged, that Sweet had obtained a judgment for more than was due him was no ground for opening up the judgment. It requires more than error in the amount of a default judgment obtained upon service by publication to justify the court in opening the judgment. There must be a showing of want of notice to the moving party in time to appear and defend. Having brought the action, knowing it was pending, and being bound to know all subsequent proceedings therein, Matteson acquired his quitclaim deed with full notice, and, moreover, almost a year before Sweet opened the first judgment. This was sufficient to prevent Matteson from having the Sweet judgment opened if he had not appeared by his attorney at the hearing of Sweet's application. In fact, none of the grounds stated in the Matteson application were sufficient to justify the court in setting aside the confirmation of Sweet's sale or in opening the judgment.

The specific ground upon which the court opened up the Sweet judgment and allowed Matteson to defend was the failure of Sweet

to give notice to James D. Rose, holder of the fee title that he, Sweet, would apply to have the first judgment opened. This was not done to protect the interest of James D. Rose but to protect Matteson, whose application to open the judgment recited that he had acquired Rose's interest in the lands and that he desired to make a defense to the amount of Sweet's claim, and to redeem from Sweet's judgment. His application showed that he stood in the shoes of Rose, and it was manifest error to open Sweet's judgment and allow the trial of the new issues presented by Matteson.

The cases cited in support of the wholesome doctrine that equity will compel a mortgagee to account for rents and profits and apply them to the reduction of the mortgage debt are cases where it would manifestly be inequitable to the mortgagor or to one who has acquired his interest not to allow proper credits upon the indebtedness. If Matteson had presented his claim under his quitclaim deed before Sweet obtained his judgment, a different question might have arisen, but after taking the quitclaim deed, he held it for eleven months before the rendition of the judgment foreclosing Sweet's mortgage. Because he was a party to the foreclosure action, he could not bring himself within the provisions of section 83 of the code, authorizing the opening of such a judgment. He could not make it appear to the satisfaction of the court, "that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense." (Gen. Stat. 1915, § 6974.) There are no equities in his favor as the record stands. The demurrer to his application should have been sustained. The court was in error in setting aside the confirmation of Sweet's sale and in opening up the Sweet judgment.

The judgment in Matteson's favor is reversed and the cause remanded with directions to correct these errors and enter judgment in favor of Sweet for costs.